FILED
2022 Apr-06  PM 04:26
U.S. DISTRICT COURT
N.D. OF ALABAMA

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ALABAMA SOUTHERN DIVISION**

| | |
|---|---|
| JACLYN VANDERSLICE, AS ANTICIPATED REPRESENTATIVE OF THE ESTATE OF TERRELL VANDERSLICE,<br><br>　　　　　Plaintiff,<br><br>v.<br><br>COOK INCORPORATED, COOK MEDICAL LLC, AND WILLIAM COOK EUROPE APS,<br><br>　　　　　Defendants. | Civil Action No.:<br><br>**COMPLAINT AND DEMAND FOR JURY TRIAL** |

<u>**PLAINTIFF'S COMPLAINT AND DEMAND FOR JURY TRIAL**</u>

Plaintiff JACLYN VANDERSLICE, as anticipated representative of the ESTATE OF TERRELL VANDERSLICE (hereinafter "Plaintiff"), by and through undersigned attorneys, hereby files this, Complaint and Demand for Jury Trial, against Defendants COOK INCORPORATED, COOK MEDICAL LLC; and WILLIAM COOK EUROPE APS (hereinafter "Defendants"), and alleges the following:

<u>**I. GENERAL BACKGROUND**</u>

1.      This is an action for damages relating to Defendants' development, testing, assembling, manufacture, packaging, labeling, preparing, distribution, marketing, supplying, and/or selling defective product sold under the name "inferior vena cava filters" (hereinafter "IVC Filter").

2.      Cook IVC Filters are associated with, and cause, an increased risk for serious injury and death as a result of adverse events including, but not limited to: perforation, fracture, migration, and tilt.

3.      At all times relevant to this action, Cook intentionally, recklessly, and/or negligently failed to act as to the known failures and injuries associated with its devices and/or failed to warn about and concealed, suppressed, omitted, and/or misrepresented the risks, dangers, defects and disadvantages of its IVC Filters.

4.      At all times relevant to this action, Cook intentionally, recklessly, and/or negligently advertised, labeled, promoted, marketed, sold and/or distributed its IVC Filters as a safe medical device when in fact Cook had reason to know, and/or did know, that it's IVC Filters were not safe for its intended purposes, and that its IVC Filters caused serious injury and death.

5.      At all times relevant to this action, Cook is and was strictly liable for injuries caused by its IVC Filters because the devices are unreasonably dangerous and not accompanied by adequate warnings about its danger.

## II. JURISDICTION AND VENUE

6.      The Court has subject matter jurisdiction over this matter because the parties are citizens of different states and the amount in controversy exceeds $75,000, exclusive of interest and costs. *See* 28 U.S.C. § 1332.

7.      The Court has personal jurisdiction over the Defendants because they have sufficient minimum contacts such that asserting jurisdiction over the defendants does not offend traditional notions of fair play and substantial justice. *International Shoe v. Washington*, 326 U.S. 310, 325 (1945).

8.      Venue is proper in this district because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this district. *See* 28 U.S.C. § 1391(b)(2). The Defendants' also regularly conduct business in this district.

## III. PARTIES

9.      Plaintiff, Jaclyn Vanderslice, as anticipated representative of the Estate of Terrell Vanderslice, at all times relevant to this action is and was a citizen of and resident of Shelby County in the State of Alabama.

10.      At the time of his death on May 13, 2021, Decedent Terrell Vanderslice (hereinafter "Decedent"), was a citizen of and resident of Shelby County in the State of Alabama.

11.      Defendant Cook Incorporated is an Indiana Corporation with its principal place of business located at 750 Daniels Way, P.O. Box 489, Bloomington, Indiana 47404. Cook Incorporated is a privately-owned corporation with wholly owned subsidiaries that it controlled, including Cook Medical, LLC and William Cook Europe APS.

12.      Defendant Cook Medical, LLC is a privately-owned Indiana limited liability company with its principal place of business located at 1025 West Acuff Road, Bloomington, Indiana 47404. Cook Medical, LLC was formerly known as Cook Medical Incorporated.

13.      Defendant William Cook Europe APS is based in Bjaeverskov, Denmark with its principal place of business located at Sandet 6, 4632 Bjaeverskov, Denmark and is authorized to do business in the state of Alabama.

14.      Defendants Cook Incorporated, Cook Medical LLC and William Cook Europe APS are hereinafter collectively referred to as "Defendants".

15.      At all relevant times, the Defendants were in the business of designing, setting specifications for, manufacturing, preparing, compounding, assembling, processing, marketing,

packaging, and selling Celect® inferior vena cava filters to distributors and sellers, including hospitals, for implantation by physicians at hospitals in patients throughout the United States, including in Alabama.

16.     At all relevant times, each of the Defendants regularly marketed, distributed and sold Celect® filters throughout Alabama and sold the Celect® filter in Alabama for resale and implantation into human patients, including Decedent.

17.     At all relevant times, each of the Defendants and their directors and officers acted within the scope of their authority. At all relevant times, each Defendant was responsible for each other's actions and inactions; and each Defendant acted on behalf of each other Defendant.

18.     At all relevant times, the Defendants possessed a unity of interest between themselves and Cook. Cook exercised control over its subsidiaries and affiliates. As such, each Defendant is responsible jointly and severally to Decedent for his injuries, losses and damages.

## IV. FACTUAL BACKGROUND

19.     Defendants design, research, develop, manufacture, test, market, advertise, distribute, and sell products that are sold and marketed to prevent, among other things, recurrent pulmonary embolism by placement in the inferior vena cava of human patients. Defendant's products include, the Cook Celect® Inferior Vena Cava Filter and the Gunther Tulip® Inferior Vena Cava Filter (hereinafter referred to as "Cook Filters"), which are implanted in human patients via a coaxial introducer sheath.

20.     Defendants sought Food and Drug Administration ("FDA") approval to market the Cook Filters and/or its components under § 510(K) of the Medical Device Amendment.

21.     § 510(k) allows marketing of medical devices if the device is substantially equivalent to other legally marketed predicate devices without formal review for the safety or

efficacy of the device. The FDA explained the differences between the 510(k) approval process

and the more rigorous "premarket approval" process in an amicus brief filed with the United States

Court of Appeals for the Third Circuit in *Horn v. Thoratec Corp.*, 376 F.3d 163, 167 (3d Cir.

2004):

> A manufacturer can obtain an FDA finding of "substantial equivalence" by submitting a premarket notification to the agency in accordance with section 510(k). . . A device found to be 'substantially equivalent' to a predicate device is said to be "cleared" by FDA (as opposed to "approved" by the agency under a [premarket approval]).
> A pre-market notification submitted under 510(k) is thus entirely different from a [pre-market approval] which must include data sufficient to demonstrate that the device is safe and effective. (Emphasis in original).

In *Medtronic, Inc. v. Lohr*, 518 U.S. 470, 478-479 (1996), the Supreme Court similarly described

the 510(k) process, observing:

> If the FDA concludes on the basis of the [manufacturer's] §510(k) notification that the device is 'substantially equivalent' to a pre-existing device, it can be marketed without further regulatory analysis. . .The §510 (k) notification process is by no means comparable to the [premarket approval] process; in contract to the 1,200 hours necessary to complete a PMA review, the §510(k) review is completed in average of 20 hours. . . Section §510(k) notification requires little information, rarely elicits a negative response from the FDA, and gets process quickly.

An IVC filter, including the Cook Filters, are devices designed to filter blood clots that travel from

the lower portions of the body to the heart and lungs. IVC filters may be designed to be implanted,

either temporarily or permanently, within the inferior vena cava.

22.     The inferior vena cava is the largest vein in the human body that returns blood to

the heart from the lower portion of the body. In certain people, and for various reasons, blood clots

travel from vessels in the legs and pelvis, through the inferior vena cava into the lungs. Often these

blood clots develop in the deep leg veins. These clots are called "deep vein thrombosis" or DVT.

Once the blood clots reach the lungs they are considered "pulmonary emboli" or PE. An IVC filter,

like the Cook IVC Filters, is designed to prevent these thromboembolic events.

23.    Cook IVC Filters are retrievable filters.

24.    The Cook Celect® has four (4) anchoring struts for fixation and eight (8) independent secondary struts to improve self-centering and clot trapping.

25.    At all times relevant hereto, the Cook Filters were widely advertised and promoted by the Defendants as safe and effective treatment for prevention of recurrent pulmonary embolism via placement in the inferior vena cava. At all times relevant hereto, Defendants knew its Cook Filters were defective and knew that defect was attributable to the design's failure to withstand the normal anatomical and physiological loading cycles exerted *in vivo*.

26.    A retrospective review of all Cook Gunther Tulip® filters and Cook Celect® filters retrieved between July 2006 and February 2008 was performed. One Hundred and thirty (130) filter retrievals were attempted but in 33 cases, the standard retrieval technique failed. The authors concluded that "unsuccessful retrieval was due to significant endothelialization and caval penetration" and that "hook endothelialization is the main factor resulting in failed retrieval and continues to be a limitation with these filters." O. Doody, et al.; "Assessment of Snared-Loop Technique When Standard Retrieval of Inferior Vena Cava Filters Fail" <u>Cardiovasc Intervent Radiol </u>(Sept 4, 2008 Technical Note).

27.    A retrospective review of 115 patients who underwent Cook Celect ® IVC filter insertion between December 2005 and October 2007 was performed. While filter insertion was successful in all patients, the authors also concluded that "[f]ailed retrieval secondary to hook endothelialization continues to be an issue with this filter." O. Doody, et al; <u>Journal of Medical Imaging and Radiation Oncology </u>"Initial Experience in 115 patients with the retrievable Cook Celect® vena cava filter" 53 (2009) 64-68 (original article).

28.     In a review of clinical data related to 73 patients who had Celect® IVC filter implanted between August 2007 and June 2008, the authors found that the Celect® IVC filter was related to a high incidence of caval filter leg penetration. Immediately after fluoroscopy-guided filter deployment in 61 patients, four filter (6.5%) showed significant tilt. Follow-up abdominal CT in 18 patients demonstrated filter related problems in seven (39%), which included penetration of filter legs in four and fracture/migration of filter components in one.

29.     In a study of Gunther Tulip® and Celect® IVC filters implanted between July 2007 and May of 2009 reported by Cardiovascular Interventional Radiology electronically on March 30, 2011 and published by journal in April 2012, one hundred percent of the Cook Celect® filters and Guther Tulip® filters imaged after 71 days of implant caused some degree of filter perforation of the venal caval wall. Durack JC, et al, Cardiovasc Intervent Radiol., "Perforation of the IVC: rule rather than the exception after longer indwelling times for the Gunther Tulip® and Celect® Retrievable Filters," 2012 Apr.; 35(2):299-308. Epub 2011 Mar 30. The authors concluded: "Although infrequently reported in the clinical literature, clinical sequelae from IVC filter components breaching the vena cava can be significant." Defendants knew or should have known their IVC filters were more likely than not to perforate the vena cava wall.

30.     This same study reported that tilt was seen in 20 out of 50 (40%) of the implanted Gunther Tulip® and Celect® and all tilted filters also demonstrated vena caval perforation. Defendants knew or should have known that their IVC filters were more likely than not to tilt and to perforate.

31.     While not inclusive of all medical studies published during the relevant time period, the above references demonstrate that Defendants failed to disclose to physicians, patients and/or Decedent that its Cook IVC Filters were subject to perforation, fracture, migration, tilt, and their

ability of removal even though they knew or should have known these filters were subject to these failures.

32.     At all times relevant hereto, the Defendants continued to promote the Cook Filters as safe and effective even when inadequate clinical trials had been performed to support long or short-term safety and/or efficacy.

33.     The Defendants concealed the known risks and failed to warn of known or scientifically knowable dangers and risks associated with the Cook Filters.

34.     Cook Filters are constructed out of a cobalt-chromium-nickel-molydenum-iron alloymaterial called Conichrome.

35.     The Defendants specifically advertise the Chronicrome filter as a frame which "reduces the risk of fracture."

36.     The failure of Cook Filters is attributable, in part, to the fact that the Cook Filters suffer from a design defect causing it to be unable to withstand the normal anatomical and physiological loading cycles exerted *in vivo*.

37.     At all times relevant hereto, the Defendants failed to provide sufficient warnings and instructions that would have put Decedent and the general public on notice of the dangers and adverse effects caused by implantation of Cook Filters, including, but not limited to the design's failure to withstand the normal anatomical and physiological loading cycles exerted *in vivo*.

38.     The Cook Filters were designed, manufactured, distributed, sold and/or supplied by the Defendants, and were marketed while defective due to the inadequate warnings, instructions, labeling, and/or inadequate testing in light of the Defendants' knowledge of the products' failure and serious adverse events.

39.     That at all times relevant hereto, the officers and/or directors of the Defendants named herein participated in, authorized and/or directed the production and promotion of the aforementioned products when they knew or should have known of the hazardous and dangerous propensities of said products, and thereby actively participated in the tortious conduct that resulted in the injuries suffered by Decedent.

40.     On or about February 25, 2010, Decedent Terrell Vanderslice was implanted with a Cook Celect® Inferior Vena Cava Filter at UAB Hospital in Birmingham, Alabama by William D. Jordan, M.D.

41.     The device usage implant log was included in his medical records and identified the device's part number as G48373.

42.     On or about May 25, 2019, Plaintiff underwent a computed tomography ("CT") scan of his abdomen and pelvis.

43.     On or about March 31, 2020, the imaging and radiology reports for the May 25, 2019 CT scan were sent for independent expert review.

44.     On or about April 22, 2020, the independent medical expert reviewed the CT scan taken on or about May 25, 2019, and determined that the three posterior filter struts were seen piercing the posterior wall by 8.35 mm, 10.67 mm, and 8.30 mm; that one of the posterolateral filter struts was seen piercing the posterior wall by 10.58 mm and was lying adjacent to the prevertebral structures; that a filter strut just anterior to the posterolateral strut was seen piercing the corresponding wall by 10.51 mm; that the lateral filter strut was seen piercing the lateral wall by 10.11 mm; that the medial filter strut was seen piercing the medial wall by 8.75 mm; that there was a posterior and lateral tilt of 25 degrees of the filter that was noted; and that there was an anterior tilt of the filter of 25.22 degrees.

45.     Furthermore, Decedent suffered significant injuries, including significant pain and distress that restricted his ability to engage in activities of daily living prior to his passing on May 13, 2021.

## COUNT I: STRICT PRODUCTS LIABILITY – FAILURE TO WARN

46.     Plaintiff repeats and realleges all previous paragraphs.

47.     Cook Filters were defective and unreasonably dangerous when they left the possession of the Defendants in that they contained warnings insufficient to alert consumers, including Decedent, of the dangerous risks associated with the subject product, including but not limited to the risk of tilting, perforation, fracture, and migration which are associated with and did cause serious injury and/or death.

48.     Information provided by Cook to the medical community and to consumers concerning the safety and efficacy of its Cook Filters did not accurately reflect the serious and potentially fatal adverse events Plaintiffs could suffer.

49.     At all times relevant hereto, the Cook Filters were dangerous and presented a substantial danger to patients who were implanted with Cook Filters, and these risks and dangers were known or knowable at the times of distribution and implantation in Decedent. Ordinary consumers would not have recognized the potential risks and dangers Cook Filters posed to patients, because their use was specifically promoted to improve the health of such patients.

50.     Had adequate warnings and instructions been provided, Decedent would not have been implanted with the Cook Filter and would not have been at risk of the harmful injuries described herein. The Defendants failed to provide warnings of such risks and dangers to Plaintiffs and their medical providers as described herein. Neither Decedent, nor Decedent's physicians

knew, nor could they have learned through the exercise of reasonable care, the risks of serious injury and/or death associated with and/or caused by Cooks' Filters.

51.     Defendants knew or had knowledge that the warnings that were given failed to properly warn of the increased risks of serious injury and/or death associated with and/or caused by Cook Filters.

52.     Decedent, individually and through his implanting physician, reasonably relied upon the skill, superior knowledge and judgment of the Defendants.

53.     Defendants were under a continuing duty to warn Decedent and his physicians of the dangers associated with the filter.

54.     Safer alternatives were available and effective and without the risks posed by Cook's Filters.

55.     As a direct and proximate result of the Cook Filter's defects, as described herein, Decedent suffered permanent and continuous injuries, pain and suffering, disability and impairment.

56.     By reason of the foregoing, Defendants are liable to Plaintiff for damages as a result of their failure to warn and/or adequately warn the Decedent and his healthcare professionals about the increased risk of serious injury and death caused by their defective Cook Filters.

57.     WHEREFORE, Plaintiff demands judgment against Defendants and seeks damages, including compensatory damages, exemplary damages, and punitive damages, together with interest, the costs of suit and attorneys' fees, and such other and further relief as this Court deems just and proper.

## <u>COUNT II: STRICT PRODUCTS LIABILITY – DESIGN DEFECT</u>

58.     Plaintiff repeats and realleges all previous paragraphs.

59.     Defendants have a duty to provide adequate warnings and instructions for their products including their Cook Filters, to use reasonable care to design a product that is not unreasonably dangerous to users.

60.     At all times relevant to this action, Defendants designed, tested, manufactured, packaged, labeled, marketed, distributed, promoted and sold their Cook Filters, placing devices into the stream of commerce.

61.     At all times relevant to this action, Cook's Filters were designed, tested, inspected, manufactured, assembled, developed, labeled, sterilized, licensed, marketed, advertised, promoted, sold, packaged, supplied and/or distributed by Defendants in a condition that was defective and unreasonably dangerous to consumers, including Decedent.

62.     Cook Filters are defective in their design and/or formulation in that they are not unreasonably fit, suitable, or safe for its intended purpose and/or its foreseeable risks exceed the benefits associated with their design and formulation.

63.     Cook Filters were expected to reach, and did reach, users and/or consumers including Decedent, without substantial change in the defective and unreasonably dangerous condition in which they were manufactured and sold.

64.     Physicians implanted as instructed via the Instructions for Use and in a foreseeable manner as normally intended, recommended, promoted, and marketed by the Defendants. Decedent received and utilized the Cook Filter in a foreseeable manner as normally intended, recommended, promoted, and marketed by the Defendants.

65.     Cook Filters were and are unreasonably dangerous in that, as designed, failed to perform safely when used by ordinary consumers, including Decedent, when the filters were used as intended and in a reasonably foreseeable manner.

66.    Cook Filters were and are unreasonably dangerous and defective in design or formulation for their intended use in that, when they left the hands of the manufacturers and/or supplier, they posed a risk of serious vascular and other serious injury which could have been reduced or avoided, *inter alia*, by the adoption of a feasible reasonable alternative design. There were safer alternative designs for the like products.

67.    Cook Filters were insufficiently tested and caused harmful adverse events that outweighed any potential utility.

68.    Cook Filters, as manufactured and supplied, were defective due to inadequate warnings, and/or inadequate clinical trials, testing, and study, and inadequate reporting regarding the results of the clinical trials, testing and study.

69.    Cook Filters, as manufactured and supplied, were defective due to its no longer being substantially equivalent to its predicate device with regard to safety and effectiveness.

70.    Cook Filters, as manufactured and supplied by the Cook Defendants, are and were defective due to inadequate post-marketing warnings or instructions because, after Cook Defendants knew or should have known of the risk of injuries from use and acquired additional knowledge and information confirming the defective and dangerous nature of its Cook Filters, Cook Defendants failed to provide adequate warnings to the medical community and the consumers, to whom Cook Defendants were directly marketing and advertising; and further, Cook Defendants continued to affirmatively promote their Cook Filters as safe and effective and as safe and effective as their predicate device.

71.    As a direct and proximate result of the Cook Filter's defects, as described herein, Decedent suffered permanent and continuous injuries, pain and suffering, disability and impairment.

72.     By reason of the foregoing, Defendants are liable to Plaintiff for damages as a result of their failure to warn and/or adequately warn the Decedent and his healthcare professionals about the increased risk of serious injury and death caused by their defective Cook Filters.

73.     WHEREFORE, Plaintiff demands judgment against the Defendants and seeks damages, including compensatory damages, exemplary damages, and punitive damages, together with interest, the costs of suit and attorneys' fees, and such other and further relief as this Court deems just and proper.

## COUNT III: NEGLIGENCE

74.     Plaintiff repeats and realleges all previous paragraphs.

75.     At all times relevant to this cause of action, the Defendants were in the business of designing, developing, manufacturing, marketing and selling sophisticated medical devices, including its Cook Filters.

76.     At all times relevant hereto, the Defendants were under a duty to act reasonably to design, develop, manufacture, market and sell a product that did not present a risk of harm or injury to the Decedent and to those people receiving their Filters.

77.     At the time of manufacture and sale of the Cook Filters, the Cook Defendants knew or reasonably should have known the Cook Filters:

a.     were designed and manufactured in such a manner so as to present an unreasonable risk of fracture of portions of the device, as aforesaid;

b.     were designed and manufactured so as to present an unreasonable risk of migration of the device and/or portions of the device, as aforesaid;

    c.    were designed and manufactured to have unreasonable and insufficient strength or structural integrity to withstand normal placement within the human body; and/or

    d.    were designed and manufactured so as to present an unreasonable risk of perforation and damage to the vena caval wall.

78.    Despite the aforementioned duty on the part of the Defendants, they committed one or more breaches of their duty of reasonable care and were negligent in:

    a.    unreasonably and carelessly failing to properly warn of the dangers and risks of harm associated with the Cook Filters, specifically its incidents fracture, migration, perforation and other failures;

    b.    unreasonably and carelessly manufacturing a product that was insufficient in strength or structural integrity to withstand the foreseeable use of normal placement within the human body;

    c.    unreasonably and carelessly designed a product that was insufficient in strength or structural integrity to withstand the foreseeable use of normal placement within the human body; and

    d.    unreasonably and carelessly designed a product that presented a risk of harm to the Plaintiff and other similarly situated in that it was prone to fail.

79.    As a direct and proximate result of the Cook Filter's defects, as described herein, Decedent suffered permanent and continuous injuries, pain and suffering, disability and impairment.

80.    By reason of the foregoing, Cook Defendants are liable to the Plaintiff for damages as a result of their failure to warn and/or adequately warn the Decedent and his healthcare

professionals about the increased risks of serious injury and death caused by their defective Cook Filters.

81.     WHEREFORE, Plaintiff demands judgment against the Cook Defendants and seeks damages, including compensatory damages, exemplary damages, and punitive damages, together with interest, the costs of suit and attorneys' fees, and such other and further relief as this Court deems just and proper.

## COUNT IV: NEGLIGENCE PER SE
### (Violation of 21 U.S.C. §§321, 331, 352 and 21 C.F.R. §§ 1.21, 801, 803, 807, 820)

82.     Plaintiff repeats and realleges all previous paragraphs.

83.     At all times herein mentioned, Defendants had an obligation not to violate the law, including the Federal Food, Drug and Cosmetic Act and the applicable regulations, in the manufacture, design, testing, production, processing, assembling, inspection, research, promotion, advertising, distribution, marketing, labeling, packaging, preparation for use, consulting, sale, warning and post-sale warning and other communications of the risks and dangers of Cook Inferior Vena Cava Filters.

84.     By reason of its conduct as alleged herein, Defendants violated provisions of statutes and regulations, including but not limited to, the following:

a.     Cook violated the Federal Food, Drug and Cosmetic Act, 21 U.S.C. §§ 331 and 352, by misbranding its Cook IVC Filters;

b.     Cook violated the Federal Food, Drug and Cosmetic Act, 21 U.S.C. §321 in making statements and/or representations via word, design, device or any combination thereof failing to reveal material facts with respect to the consequences that may result from the use of Cook IVC Filters to which the labeling and advertising relates;

c.     Cook violated 21 C.F.R. §1.21 in misleading the consumers and patients by concealing material facts in light of representations made regarding safety and efficacy of its Cook IVC Filters;

d.     Cook violated 21 C.F.R. §801 in mislabeling its Cook IVC Filters as to safety and effectiveness of its products and by failing to update its label to reflect post-marketing evidence that Cook IVC Filters were associated with an increased risk of injuries due to tilting, fracture, migration, and perforation;

e.     Cook violated 21 C.F.R. §803 by not maintaining accurate medical device reports regarding adverse events of tilting, fracture, migration, perforation and complex removal procedures and/or misreporting these adverse events maintained via the medical device reporting system;

f.     Cook violated 21 C.F.R. §807 by failing to notify the FDA and/or the consuming public when its Cook IVC Filters were no longer substantially equivalent with regard to safety and efficacy with regard to post-marketing adverse events and safety signals; and

g.     Cook violated 21 C.F.R. §820 by failing to maintain adequate quality systems regulation, including, but not limited to, instituting effective corrective and preventative actions.

85.     WHEREFORE, Plaintiff demands judgment against the Defendants and seeks damages, including compensatory damages, exemplary damages, and punitive damages, together with interest, the costs of suit and attorneys' fees, and such other and further relief as this Court deems just and proper.

## COUNT VII: VIOLATIONS OF ALABAMA LAW PROHIBITING CONSUMER FRAUD AND UNFAIR DECEPTIVE TRADE PRACTICES

86.     Plaintiff repeats and realleges all previous paragraphs.

87.     This suit is filed pursuant to provisions of Ala. Code § 8-19-1 et seq. of the Alabama Deceptive Trade Practices Act upon grounds that the acts and procedures of Defendants as described in this Complaint are prohibited by the Statute, including but not limited to Ala. Codes §§ 8-19-5 (2), (3), (5), (7), (9), and (27).

88.     The Defendants had a statutory duty to refrain from unfair or deceptive acts or practices in the sale and promotion of Cook IVC Filters to Decedent.

89.     The Defendants engaged in unfair, unconscionable, deceptive, fraudulent, and misleading acts or practices in violation of Alabama's consumer protection laws. Ala Code § 8-19-1 et seq.

90.     Through its false, untrue, and misleading promotion of Cook IVC Filters, as described herein, which were read, heard, seen, known of, and relied upon by Decedent, the Defendants induced Decedent, as described herein, to purchase and/or pay for the purchase of the Cook IVC Filter at issue.

91.     The Defendants misrepresented the alleged benefits, quality, grade, standard, or characteristics of Cook's IVC Filters; suppressed, omitted, concealed, and failed to disclose material information concerning known adverse effects of Cook IVC Filters, as descried herein; misrepresented the quality and efficacy of Cook IVC Filters as compared to much lower-cost alternatives, as described herein; misrepresented and advertised that Cook IVC Filters were of a particular standard, quality, or grade that they were not, as described herein; misrepresented Cook IVC Filters in a manner that later, on disclosure of the true facts, there was a likelihood that

Decedent would have opted for an alternative IVC Filter or method of preventing pulmonary emboli.

92.     The Defendants' conduct created a likelihood of, and in fact caused, confusion and misunderstanding, as described herein. The Defendants' conduct, mislead, deceived, and damaged Decedent, as described herein; and the Defendants' fraudulent, misleading, and deceptive conduct was perpetrated with an intent that Plaintiff rely on said conduct by purchasing and/or paying for a purchase of a Cook IVC Filter. Moreover, the Defendants knowingly took advantage of Decedent, as described herein, who was reasonably unable to protect his interests due to ignorance of the harmful adverse effects of Cook's IVC Filters.

93.     The Defendants' conduct was willful, outrageous, immoral, unethical, oppressive, unscrupulous, unconscionable, and substantially injurious to Decedent and offends the public conscience.

94.     Decedent was induced by Cook, as described herein, and as a result purchased their Cook IVC Filter primarily for personal, family, or household purposes.

95.     As a result of the Defendants' violative conduct in Alabama and throughout the rest of the country, Decedent purchased and/or paid for a purchase of a Cook IVC Filter that was not made for resale.

96.     WHEREFORE, Plaintiff demands judgment against the Defendants and seeks damages, including compensatory damages, exemplary damages, and punitive damages, together with interest, the costs of suit and attorneys' fees, and such other and further relief as this Court deems just and proper.

## COUNT VIII: PUNITIVE DAMAGES

97.     Plaintiff repeats and realleges all previous paragraphs.

98.    At all times material hereto, the Defendants knew or should have known their Cook Filters were inherently dangerous with respect to the risk of tilt, fracture, migration and/or perforation.

99.    At all times material hereto, the Defendants attempted to misrepresent and did knowingly misrepresent facts concerning the safety of their Cook Filters.

100.   The Defendants' misrepresentations included knowingly withholding material information from the medical community and the public, including Decedent's physicians, concerning the safety of their Cook Filters. The Defendants' conduct was willful, wanton, and undertaken with a conscious indifference to the consequences that consumers of their product faced, including Decedent.

101.   At all times material hereto, Defendants knew and recklessly disregarded the fact that their Cook Filters have an unreasonably high rate of tilt, fracture, migration and/or perforation.

102.   Notwithstanding the foregoing, Defendants continued to market their Cook Filters aggressively to consumers, including the Decedent, without disclosing the aforesaid side effects.

103.   Defendants knew their Cook Filters' lack of warnings regarding the risk of tilt, fracture, migration and/or perforation, but intentionally concealed and/or recklessly failed to disclose that risk and continued to market, distribute, and sell their Filters without said warnings so as to maximize sales and profits at the expense of the health and safety of the public, including Decedent, in conscious disregard of foreseeable harm caused by Cook Filters.

104.   Defendants' intentional and/or reckless failure to disclose information deprived Decedent's physicians of necessary information to enable them to weight the true risks of using Cook Filters against their benefits.

105.   As a direct and proximate result of Defendants' willful, wanton, careless, reckless, conscious, and deliberate disregard for the safety and rights of consumers, including Decedent, Decedent suffered severe and permanent physical and emotional injuries, as described with particularity, above.

106.   Defendants' aforesaid conduct was committed with knowing, conscious, careless, reckless, willful, wanton, and deliberate disregard for the safety and rights of consumers, including the Decedent, thereby entitling the Plaintiff to punitive damages in an amount appropriate to punish Defendants and deter them from similar conduct in the future.

107.   WHEREFORE, Plaintiff demands judgment against the Defendants and seeks damages, including compensatory damages, exemplary damages, and punitive damages, together with interest, the costs of suit and attorneys' fees, and such other and further relief as this Court deems just and proper.

## IX: PRAYER FOR RELIEF

108.   WHEREFORE, Plaintiff demands judgment against the Cook Defendants as follows:

a.   Compensatory damages, including without limitation past and future medical expenses; past and future pain and suffering; past and future emotional distress; past and future loss of enjoyment of life; and consequential damages;

b.   Punitive damages in the amount sufficient to punish Defendants and set an example;

c.   Disgorgement of profits;

d.      Restitution;

e.      Costs and fees of this action, including reasonable attorneys' fees;

f.      Prejudgment interest and all other interest recoverable; and

g.      Such other additional and future relief as Plaintiff may be entitled to in law

or in equity according to the claims pled herein.

## DEMAND FOR JURY TRIAL

Plaintiff respectfully requests trial by jury in the above case as to all issues.

DATED April 6, 2022.

Respectfully Submitted,

*/s/ Nathan Ryan*
Nathan Ryan
AL Bar Number: RYA017
**SINGING RIVER LAW, LLC**
313 West Tombigbee St.
Florence, AL 35630
Telephone: (256) 764-0097
Facsimile: (256) 767-5705
Email: nathan@singingriverlaw.com

AND

*/s/ Taylor W. Williams*
Taylor W. Williams
*Pro Hac Vice* forthcoming
UT Bar No. 17348
**DRIGGS, BILLS & DAY P.C.**
737 E. Winchester St.
Salt Lake City, UT 84107
Telephone: (801) 308-9179
Facsimile: (801) 752-0607
Email: twilliams@advocates.com
*Attorneys for Plaintiff*